UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

          Plaintiff,

-against-

CLGE, INC.; CHRISTINE MOUSSU,
individually, and as an officer, director, or
managing member of I.D. Marketing Solutions,
Inc. and CLGE, Inc.; I.D. MARKETING
SOLUTIONS, INC.; METRO DATA
MANAGEMENT, INC., d/b/a Data Marketing
Group, Ltd.; and KEITHA ROCCO, individually
and as an officer of Metro Data Management, Inc.,

          Defendants.
-----------------------------------------------------------X

**OPINION & ORDER**
**14-CV-6792 (SJF)(GRB)**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    DEC 19 2014    ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

I.    Introduction

On November 19, 2014, plaintiff United States of America ("the Government") filed, *inter alia*: (1) a complaint against defendant CLGE, Inc. ("CLGE") and defendants Christine Moussu ("Moussu"), individually, and as an officer, director, or managing member of I.D. Marketing Solutions, Inc. ("I.D. Marketing") and CLGE; I.D. Marketing; Metro Data Management, Inc. ("MDM"), d/b/a Data Marketing Group, Ltd. ("DMG"); and Keitha Rocco, individually and as an officer of MDM (collectively, "the appearing defendants"), pursuant to the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345 ("Section 1345"), seeking a temporary restraining order ("TRO"), preliminary injunction and permanent injunction enjoining the ongoing commission of criminal mail fraud in violation of 18 U.S.C. § 1341 by CLGE and the

1

appearing defendants; and (2) an application pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking a TRO and preliminary injunction (a) enjoining CLGE and the appearing defendants from (i) committing mail fraud, as defined by 18 U.S.C. § 1341, (ii) using the United States mails or causing others to use the mails to distribute: (A) any advertisements, solicitations, or promotional materials on behalf of CLGE, David Phild, Sandra Rochefort, Antonia Donera, Nicholas Chakan or any other actual or fictional individual or entity purporting to offer psychic, clairvoyant or astrological items or services for a fee; (B) any advertisements, solicitations, or promotional materials that represent, directly or indirectly, expressly or impliedly, that the recipient of the solicitation was specifically selected to receive the mailing based on a reason other than the fact that the recipient's name appears on a mailing list; (C) any advertisements, solicitations, or promotional materials that represent, directly or indirectly, expressly or impliedly, that services or items offered for purchase will, or could, improve the consumer's financial condition; or (D) any other false and misleading advertisements, solicitations, or promotional materials, (iii) receiving or causing to be delivered any incoming mail, at any address anywhere in the United States of America, which is responsive to the solicitations that are the subject of this action, or any other solicitations substantially similar thereto, (iv) selling or offering for sale any lists of consumers or mailing lists of any type compiled from consumers who have responded to solicitations bearing the names CLGE, David Phild, Sandra Rochefort, Antonia Donera, or Nicholas Chakan, and (v) performing "caging services," including processing direct mail payments and orders, credit card processing, and check scanning, with regard to direct mail solicitations on behalf of CLGE, David Phild, Sandra Rochefort, Antonia Donera, Nicholas

2

Chakan or any other individual or entity purporting to offer psychic, clairvoyant or astrological items or services for a fee; (b) directing CLGE, the appearing defendants, their agents, officers, and employees, and all other persons and entities in active concert or participation with them, to preserve all business, financial, accounting, and other records concerning the operations of CLGE, DMG, I.D. Marketing and any other corporate entity controlled by CLGE and the appearing defendants; and (c) authorizing the United States Postal Service ("USPS") to detain (i) all of CLGE's and the appearing defendants' incoming mail, at any address anywhere in the United States of America, which is responsive to the solicitations which are the subject of this action, or any others substantially similar thereto, and (ii) any advertisements, solicitations, and promotional materials which are the subject of this action and any substantially similar advertisements, solicitations, and promotional materials that are deposited into the United States mails by CLGE, the appearing defendants, their agents, officers, or employees, or any other persons or entities in active concert or participation with them. By order dated November 19, 2014, I, *inter alia*, (1) granted the branch of the Government's motion seeking a TRO against CLGE and the appearing defendants pending a hearing on its motion for a preliminary injunction; (2) directed CLGE and the appearing defendants to appear before me on December 1, 2014 at 11:00 a.m. to show cause why a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure should not be granted; (3) directed the Government to serve copies of that order, the complaint, and its motion papers by personal service or overnight mail upon CLGE and the appearing defendants on or before 5:00 p.m. on November 20, 2014; and (4) directed CLGE and the appearing defendants to serve and file any response to the application for a preliminary

3

injunction on or before 3:00 p.m. on November 28, 2014. The Government served the documents by overnight mail upon CLGE on November 20, 2014, at approximately 4:15 p.m. (Government's Letter Motion dated December 2, 2014 ["Mot."], Ex. A). In addition, on November 25, 2014, the Government served the same documents upon the New York Secretary of State, who is designated by law to accept service of process on behalf of CLGE, in accordance with Rule 4(h) of the Federal Rules of Civil Procedure. (Mot., Ex. B).

On November 25, 2014, the motion for a preliminary injunction was referred to the Honorable Gary R. Brown, United States Magistrate Judge, to hear and report. Upon the filing of motions by Moussu and I.D. Marketing to continue the preliminary injunction hearing, Magistrate Judge Brown converted the hearing into a telephone conference and ordered the Government to notify all parties of the change. On November 26, 2014, the Government served, *inter alia*, copies of the summons, complaint, Magistrate Judge Brown's electronic order entered on November 26, 2014, the TRO and order to show cause and all motion papers upon Jean Francois Bouillaguet, the President of CLGE, by International Priority shipping. (Mot., Ex. C). On November 28, 2014, the Government received confirmation that the documents had been delivered on that same date and had been signed for by "Bouillaguet." (Id.) In addition, the Government received a letter from counsel for Mr. Bouillaguet, albeit in French, confirming his receipt of the documents. (Mot., Ex. D).

All parties except CLGE appeared for the telephone conference before Magistrate Judge Brown on December 1, 2014 and consented to extend the TRO "indefinitely" provided that, as part of the extension, any party may request a preliminary injunction hearing after January 1,

4

2015 on fifteen (15) days notice. Pending before the Court is the Government's motion for a preliminary injunction against CLGE for its failure to appear and show cause why a preliminary injunction should not be entered against it. CLGE has not filed any response or opposition to the Government's motion or otherwise appeared in this action to date. For the reasons set forth herein, plaintiff's motion for a preliminary injunction against CLGE is granted.

II. Discussion

A. 18 U.S.C. § 1345

Section 1345(a)(1) provides, in relevant part, that "[i]f a person is– (A) violating or about to violate this chapter [Chapter 63 of Part I of Title 18 of the United States Code entitled Mail Fraud and Other Fraud Offenses] * * *; the Attorney General may commence a civil action in any Federal Court to enjoin such violation." Section 1345(b) provides, in relevant part, that "[t]he court * * * may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. * * *"

"To support an application for a preliminary injunction under 18 U.S.C. § 1345, the Government must demonstrate that 'probable cause' exists to believe that the defendant is currently engaged or about to engage in a fraudulent scheme violative of either the mail, wire or bank fraud statutes * * *." United States v. William Savran & Assocs., Inc., 755 F. Supp. 1165, 1177 (E.D.N.Y. 1991); see also United States v. Belden, 714 F. Supp. 42, 45-46 (N.D.N.Y.

1987). Section 1345 authorizes injunctive relief so long as "the alleged fraudulent scheme is ongoing and there exists a threat of continued perpetration[.]" William Savran, 755 F. Supp. at 1178.

B.  Mail Fraud

A person commits mail fraud, in relevant part, who,

> "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any * * * spurious * * * article, or anything represented to be or intimated or held out to be such * * * spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, * * *."

18 U.S.C. § 1341. In short, "mail fraud * * * occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008) (quoting 18 U.S.C. § 1341). "The crime of mail fraud[] * * * has three elements: '(1) use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme." United States v. Kinney, 211 F.3d 13, 17 (2d Cir. 2000); accord United States v. Litwok, 678 F.3d 208, 213 (2d Cir. 2012).

6

1.  Scheme to Defraud

To satisfy the "scheme to defraud" element of a mail fraud violation, the Government must demonstrate "(i) the existence of a scheme to defraud, * * * (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, * * * and (iii) the materiality of the misrepresentations." United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000) (citations omitted); see also United States v. Burke, 445 F. App'x 395, 396-97 (2d Cir. Nov. 3, 2011) (summary order) ("The government must establish, as part of the scheme, fraudulent intent on the part of the defendant as well as the materiality of any misrepresentation.")

a.  Scheme to Defraud

A "'scheme to defraud' * * * has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" Autuori, 212 F.3d at 115 (quoting McNally v. United States, 483 U.S. 350, 358, 107 S. Ct. 2875, 97 L. Ed. 2d 292 (1987)). "It is characterized by a departure from community standards of fair play and candid dealing." Id. (quotations and citation omitted). "The scheme-to-defraud element is construed broadly to encompass 'everything designed to defraud by representations as to past or present, or suggestions and promises as to the future.'" United States v. Reifler, 446 F.3d 65, 95 (2d Cir. 2006) (quoting United States v. Altman, 48 F.3d 96, 101 (2d Cir. 1995)). The Government may meet its burden of demonstrating a scheme to defraud through circumstantial evidence. Autuori, 212 F.3d at 115.

The Government submits evidence, which is undisputed by CLGE by reason of its failure

7

to appear in this action or respond to the Government's motion, demonstrating probable cause to believe that CLGE has engaged, and is continuing to engage, in a scheme to defraud in violation of the mail fraud statute. Specifically, the declaration of Thomas Ninan, a Postal Inspector with the United States Postal Inspection Service ("USPIS") currently assigned to the United States Department of Justice Fraud Team of the USPIS-Washington Division, (Declaration of Thomas Ninan ["Ninan Decl."], ¶ 1), establishes probable cause to believe: (a) that since 2001, CLGE orchestrated a scheme involving "solicitations mailed to consumers nationwide under the names of characters who purport to be psychics or clairvoyants[,] * * * [which] appear to be personalized to the recipient, describe personalized efforts purported to have been taken on the recipient's behalf, and solicit payment for further purported personalized products or services * * * [and] falsely represent that the recipient was personally selected and that personalized efforts on the recipient's behalf already have been taken[,]" (id., ¶¶ 3, 4; see also ¶¶ 8, 11-12); (b) that the solicitations are actually "mass mailed to recipients whose names and contact information were acquired from a mailing list[] * * * [and] direct consumer responses to mail drop boxes located at commercial mail receiving agencies ('CMRA') located in Illinois, Nevada, New York, and Ontario, Canada[,] * * * [which] are then forwarded by the CMRAs to DMG in Deer Park, New York[,]" (id., ¶4; see also ¶¶ 13, 19, 21); (c) that at least two (2) of the CMRA accounts were opened on behalf of CLGE, (id., ¶ 20); (d) that the products and services advertised in the solicitations are not personalized as described therein, (id., ¶ 4); (e) that consumer responses to the solicitations "are received not by the purported psychics or clairvoyants, but by [MDM, d/b/a DMG], a direct mail services firm[] [which] opens the response, strips out the payment, records

8

the fact that a consumer responded and the payment method in a massive consumer database, and then discards the response[,]"[1] (id., ¶ 5; see also ¶¶ 21, 30-31); (f) that "DMG provides [such] 'caging' services to CLGE," (id., ¶ 30; see also ¶¶ 32, 35); and (g) that "the scheme has been operating for 14 years[,]" (id., ¶ 24). Moreover, the fact that the scheme has been operating for more than a decade demonstrates probable cause to believe that it will continue absent injunctive relief.

### b. Scienter

"Essential to a scheme to defraud is fraudulent intent." Autuori, 212 F.3d at 116 (quotations and citation omitted); accord United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999). The Government "must demonstrate that the defendant had a conscious knowing intent to defraud * * * [and] that the defendant contemplated or intended some harm to the property rights of the victim." Guadagna, 183 F.3d at 129 (quotations and citation omitted); see also United States v. Shellef, 507 F.3d 82, 107-08 (2d Cir. 2007) (holding that in order to meet the "scheme to defraud" element of a mail fraud violation, the Government must demonstrate "that the defendant contemplated actual harm that would befall victims due to his deception[.]") Like the "scheme to defraud" element, "[t]he [G]overnment may prove fraudulent intent through circumstantial evidence." Autuori, 212 F.3d at 116; see also United States v. Griffiths, 750 F.3d 237, 244 (2d Cir. 2014); Guadagna, 183 F.3d at 129. Moreover, "when the necessary result of

---

[1] According to Postal Inspector Ninan, DMG's services "are known in the direct mail industry as 'caging' services." (Ninan Decl., ¶ 5).

the scheme is to injure others, fraudulent intent may be inferred from the scheme itself." Guadagna, 183 F.3d at 130 (quotations, alterations and citation omitted).

The Government submits evidence, undisputed by CLGE by reason of its failure to appear in this action or file any response to the Government's motion, demonstrating probable cause to believe that CLGE intended to defraud the recipients of its solicitations by making affirmative misrepresentations in the solicitations it sent to them with knowledge that the statements therein were false. See, e.g. Griffiths, 750 F.3d at 244 (holding that circumstantial evidence demonstrating "that defendant made misrepresentations to the victim(s) with knowledge that the statement were false" was sufficient to show fraudulent intent); Guadagna, 183 F.3d at 129 ("Intent may be proven through circumstantial evidence, including by showing that defendant made misrepresentations to the victim(s) with knowledge that the statements were false.") Specifically, the declaration of Postal Inspector Ninan establishes probable cause to believe, *inter alia*: (1) that "[a] recurring theme in the solicitations [involved in the scheme] is the opportunity for the recipient to acquire large sums of money in a short period of time[,]" (Ninan Decl., ¶ 12); (2) that "[t]he solicitations purport to offer an exclusive means for the consumer to achieve the discussed financial windfall through the purchase of products or services tailored to the consumer's specific situation[,]" (id., ¶ 15) (emphasis added); (3) that despite the personalized appearance of the solicitations, and their claim that the psychic or clairvoyant designated thereon "became aware of the consumer's financial need through a specific, personalized vision or because it was relayed to them by a mutual friend who has requested anonymity," (Ninan Decl., ¶ 12), each recipient's name and address is actually purchased from a mailing list and inserted into

"a form letter distributed to tens of thousands of people" via "[a] mail merge process[,]" (id., ¶ 13); and (4) that, although the solicitations claim, *inter alia*, that the products described thereon are unique and that if the recipient provides additional information, such as their date and time of birth, the psychic or clairvoyant will "use that information to better evaluate [him or her] and to enhance the efficacy of the products or services for [him or her][,]" (id., ¶¶ 15-16), Moussu, one of the appearing defendants, actually "purchases the trinkets in bulk from a vendor in Hong Kong[,]" (id., ¶ 16).

        c.      Materiality

"[M]ateriality of falsehood is an element of the federal mail fraud * * * statute[]." Neder v. United States, 527 U.S. 1, 25, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). "To be material, the information withheld either must be of some independent value or must bear on the ultimate value of the transaction." Autuori, 212 F.3d at 118 (quotations and citation omitted). The mail fraud statute is violated both "by affirmative misrepresentations or by omissions of material information that the defendant has a duty to disclose." Id.

The Government submits evidence, undisputed by CLGE by virtue of its failure to appear in this action or respond to the Government's motion, demonstrating probable cause to believe that CLGE made numerous material misrepresentations in its solicitations, as set forth above, in order to induce the recipients thereof to part with their money or credit. See, e.g. United States v. Klein, 476 F.3d 111, 113-14 (2d Cir. 2007). Moreover, Postal Inspector Ninan declares, *inter alia*, that his "review of consumer letters reveals many complaints that the products or services

11

have not worked as advertised," (Ninan Decl., ¶ 16; see also ¶¶ 34, 37); and that "consumer complaints generally pertain to false representations and fraud related to the products or services provided by 'Phild' or 'Rochefort[]' [the psychics or clairvoyants named in the solicitations] * * *," (id., ¶ 37; see also ¶ 38), further evidencing the materiality of the false statements in CLGE's solicitations.

2. Use of the Mails to Solicit and Receive Money

"The gravamen of the offense [of mail fraud] is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element * * *, even if the mailing itself contains no false information[.]" Bridge, 553 U.S. at 647, 128 S. Ct. 2131 (quotations, brackets and citations omitted).

The Government submits evidence, undisputed by CLGE by virtue of its failure to appear in this action or respond to the Government's motion, demonstrating probable cause to believe that CLGE used the mail to solicit orders and receive money. Specifically, the declaration of Postal Inspector Ninan establishes probable cause to believe: (1) that "[a] recurring theme in the solicitations [involved in the scheme] is the opportunity for the recipient to acquire large sums of money in a short period of time[,]" (Ninan Decl., ¶ 12); (2) that "[t]he solicitations purport to offer an exclusive means for the consumer to achieve the discussed financial windfall *through the purchase of products or services* tailored to the consumer's specific situation[,]" (id., ¶ 15) (emphasis added); (3) that "[c]onsumers generally are charged $20-40 dollars for the products or services [advertised in the solicitations]," (id., ¶ 17); (4) that "[c]onsumers respond to CLGE

12

solicitations by U.S. mail [] * * * [and] enclose a completed response form and payment in the form of cash, check, money order or credit card[,]" (id., ¶ 19); and (5) that "the CLGE scheme generates annual revenue of $1.5-2 million[] * * * [and] generated a profit of $200,000 annually[,]" (id., ¶ 24). The evidence, thus, demonstrates that CLGE's "use of the mails is not merely 'incident' [to the scheme], it is the essential nature of [the] * * * scheme to utilize the mails to solicit and receive orders and money." William Savran, 755 F. Supp. at 1181.

### C. Irreparable Harm

"[I]n seeking preliminary injunctive relief under 18 U.S.C. § 1345, the Government is not required to demonstrate a likelihood of irreparable harm, so long as the statutory conditions are met." William Savan, 755 F. Supp. at 1179; see also United States v. Federal Record Service Corp., No. 99 Civ. 3290, 1999 WL 335826, at * 16 (S.D.N.Y. May 24, 1999) (holding that a showing of irreparable harm is not necessary to obtain a preliminary injunction under Section 1345). In any event, permitting CLGE to continue to perpetrate the mail fraud at issue constitutes irreparable harm. See, e.g. William Savan, 755 F. Supp. at 1180. Accordingly, the Government's motion for a preliminary injunction against CLGE is granted.

### III. Conclusion

For the reasons set forth above, the Government's motion for a preliminary injunction against CLGE is granted without opposition, and it is hereby,

ORDERED that, pursuant to 18 U.S.C. § 1345, pending a final determination of this

13

action, CLGE, its agents, officers, and employees, and all other persons and entities in active concert or participation with it, are enjoined from the following:

1. committing mail fraud, as defined by 18 U.S.C. § 1341,

2. using the United States mails or causing others to use the mails to distribute:

    a. any advertisements, solicitations, or promotional materials on behalf of CLGE, David Phild, Sandra Rochefort, Antonia Donera, Nicholas Chakan or any other actual or fictional individual or entity purporting to offer psychic, clairvoyant or astrological items or services for a fee;

    b. any advertisements, solicitations, or promotional materials that represent, directly or indirectly, expressly or impliedly, that the recipient of the solicitation was specifically selected to receive the mailing based on a reason other than the fact that the recipient's name appears on a mailing list;

    c. any advertisements, solicitations, or promotional materials that represent, directly or indirectly, expressly or impliedly, that services or items offered for purchase will, or could, improve the consumer's financial condition; and

    d. any other false and misleading advertisements, solicitations, or promotional materials,

14

3. receiving or causing to be delivered any mail, at any address anywhere in the United States of America, which is responsive to the solicitations that are the subject of this action, or any other solicitations substantially similar thereto, and

4. selling or offering for sale any lists of consumers or mailing lists of any type compiled from consumers who have responded to solicitations bearing the names CLGE, David Phild, Sandra Rochefort, Antonia Donera, or Nicholas Chakan; and it is further,

ORDERED that, pursuant to 18 U.S.C. § 1345, pending a final determination of this action, CLGE, its agents, officers, and employees, and all other persons and entities in active concert or participation with it, are directed to preserve all business, financial, accounting, and other records concerning its operations and the operations of any other corporate entity controlled by it; and it is further,

ORDERED that, pursuant to 18 U.S.C. § 1345, pending a final determination of this action, the United States Postal Service is authorized to detain the following:

1. all of CLGE's incoming mail, at any address anywhere in the United States of America, which is responsive to the solicitations which are the subject of this action, or any others substantially similar thereto; and

2. any advertisements, solicitations, and promotional materials which are the subject of this action and any substantially similar advertisements, solicitations, and promotional materials that are deposited into the United

States mails by CLGE, its agents, officers, or employees, or any other persons or entities in active concert or participation with it.

SO ORDERED.

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: December 19, 2014
       Central Islip, New York